UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re  
Anita R. Edwards,  
              Debtor.

Chapter 13  
Case No. 19-27975-kmp

**DECISION DENYING DEBTOR'S MOTION TO CONTINUE STAY**

      The Court held an evidentiary hearing on September 10, 2019 on the Debtor's Motion to Continue Stay. The Debtor filed this case on August 16, 2019, within one year after the Court dismissed her previous Chapter 13 case. As a result, the automatic stay under 11 U.S.C. § 362(a) will terminate by operation of § 362(c)(3)(A) on "the 30th day after the filing of the . . . case," unless the Court extends it under § 362(c)(3)(B). "[T]he court may extend the stay . . . as to any or all creditors" but only "on the motion of a party in interest" and "only if the party in interest demonstrates that the filing of the . . . case is in good faith as to the creditors to be stayed." § 362(c)(3)(B). On August 22, 2019, the Debtor moved for continuation of the automatic stay under § 362(c)(3)(B). On August 28, 2019, one of the Debtor's creditors, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust (the "Mortgage Creditor") filed an Objection to the Debtor's Motion. After testimony from the Debtor at the evidentiary hearing, the Court issued an oral ruling finding that the Debtor had not met her burden of coming forward with clear and convincing evidence to rebut the presumption that her latest bankruptcy case was not filed in good faith. This written decision is intended to supplement that oral ruling.

      As noted above, § 362(c)(3)(B) provides that "the court may extend the stay . . . as to any or all creditors" but only "on the motion of a party in interest" and "only if the party in interest demonstrates that the filing of the . . . case is in good faith as to the creditors to be stayed." Section 362(c)(3)(C) goes on to state that for the purposes of subparagraph (B), a case is "presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)": (1) as to all creditors if the Debtor had "more than 1 previous case under any of chapters 7, 11, and 13 . . . pending within the preceding 1-year period;" and (2) as to any creditor that filed a motion for relief from stay in a previous case and that motion was "pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor."

      In this case, the Debtor's case was "presumptively filed not in good faith" and the Debtor carries the burden of proving by "clear and convincing evidence" that her case was filed in good faith: (1) as to all creditors because she had a previous bankruptcy case pending within the last year (Case No. 18-29490-BHL); and (2) as to the Mortgage Creditor because the Mortgage Creditor filed a Motion for Relief from Stay in the Debtor's previous case and that Motion was resolved by conditioning or limiting the stay as to the Mortgage Creditor.

The Bankruptcy Code does not define "good faith." The Seventh Circuit has yet to analyze the concept of "good faith" in relation to § 362(c), but has explored "good faith" with respect to the filing of a Chapter 13 plan. *See In re Schaitz*, 913 F.2d 452 (7th Cir. 1990); *In re Smith*, 848 F.2d 813, 816-22 (7th Cir. 1988); *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 431-33 (7th Cir. 1982). The Seventh Circuit has also analyzed "good faith" related to a motion to dismiss a Chapter 13 petition pursuant to § 1307(c). *See In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992). Under each scenario, the Seventh Circuit refused to adopt a specific test or definition of good faith, and instead directed bankruptcy courts to look at "the totality of circumstances" and to thereby "make good faith determinations on a case-by-case basis." *Id*. The Seventh Circuit has set forth the following non-exhaustive list of factors to consider in looking at the "totality of the circumstances" in a good faith analysis: "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id*. at 1357. Ultimately, the focus of the inquiry "is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Id*. Put differently, is the debtor "really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" *Schaitz*, 913 F.2d at 453.

In looking at the totality of the circumstances and the *Love* factors, I find that the Debtor has not met her burden of proving by clear and convincing evidence that her latest bankruptcy case has been filed in good faith for the following reasons: (1) the Debtor's history of filing all four of her bankruptcy proceedings on the eve of sheriff's sale or a hearing on a motion to confirm the sheriff's sale; (2) the substantial arrearages that have accrued on the Debtor's mortgage debt, which have almost doubled since her first bankruptcy filing in 2016, as a result of failing to pay her mortgage creditor for the last four to five years as she has meandered in and out of unsuccessful bankruptcies; (3) the Debtor's history of proposing plans hinging on participation in the Court's Mortgage Modification Mediation program and failure to comply with the program requirements; and (4) a lack of evidence as to a substantial change in the Debtor's personal or financial affairs.

The Debtor's history of filing for bankruptcy protection on the eve of a sheriff's sale or on the eve of a hearing on a motion to confirm a sheriff's sale counsels against a finding of good faith. The Debtor has filed four Chapter 13 bankruptcy petitions since 2016 as outlined below:

> Case #1: The Debtor filed her first Chapter 13 bankruptcy petition on October 21, 2016 (Case No. 16-30434-SVK). As a result of the Debtor's bankruptcy filing, the Mortgage Creditor had to cancel a sheriff's sale scheduled for October 31, 2016. The Debtor's 2016 bankruptcy case was dismissed on June 29, 2017 when she failed to make her plan payments.

> Case #2: The Debtor filed her second Chapter 13 bankruptcy petition on Friday, September 22, 2017 (Case No. 17-29414-BHL). The Mortgage Creditor had a sheriff's sale scheduled for Monday, September 25, 2017 that it was again forced to cancel as a result of the Debtor's second bankruptcy filing. The Debtor's 2017

bankruptcy case was dismissed on June 21, 2018 when the Debtor failed to make her plan payments.

Case #3: The Debtor filed her third Chapter 13 bankruptcy petition on Friday, October 5, 2018 (Case No. 18-29490-BHL). The Mortgage Creditor had scheduled a sheriff's sale for Monday, October 8, 2018 that it again was forced to cancel as a result of the Debtor's third bankruptcy filing. The Debtor's 2018 bankruptcy case was dismissed on May 13, 2019 for failure to comply with the Court's order resolving the Chapter 13 Trustee's objection to confirmation which required the Debtor to (i) provide copies of the required tax returns in compliance with LR 1007.2, (ii) have the claim filed by IRS amended to show that the Debtor filed all tax returns required by 11 U.S.C. § 1325(a)(9), or file an objection to said claim, (iii) have the claim filed by Wisconsin Department of Revenue amended to show that the Debtor filed all tax returns required by 11 U.S.C. § 1325(a)(9), or file an objection to said claim, (iv) file an affidavit to support the contribution income disclosed on Schedule I; and (v) file a motion to participate in the Court's Mortgage Modification Mediation program on or before April 5, 2019.

Case #4: The Debtor filed her fourth Chapter 13 bankruptcy petition (the above-captioned case) on Friday, August 16, 2019. The Mortgage Creditor had a hearing on a motion to confirm its sheriff's sale scheduled for Monday, August 19, 2019. For the fourth time, the Mortgage Creditor was forced to cancel a proceeding related to its foreclosure proceeding against the Debtor.

The timing of each of the Debtor's bankruptcy petitions – on the eve of sheriff's sale or on the eve of a hearing on a motion to confirm a sheriff's sale – calls into question the Debtor's good faith with regard to the filing of her four bankruptcy petitions in the last three years. Her motive appears to be clear – to delay the sheriff's sale, to delay the motion to confirm the sheriff's sale, and to delay the eventual transfer of the title to her property to the successful bidder at sheriff's sale.

The Debtor's history of failing to make post-petition mortgage payments also counsels against a finding of good faith. In each of her previous bankruptcy cases, the Mortgage Creditor filed a motion for relief from stay, the Court ordered supplemental claims for the post-petition arrearage, and the case was dismissed on a Trustee's Motion to Dismiss or a Trustee's Affidavit of Default shortly thereafter:

Case #1: The Mortgage Creditor filed a Motion for Relief from Stay on February 13, 2017. On March 30, 2017, the Court entered an Order authorizing the Mortgage Creditor to file a supplemental claim for the post-petition arrearages in the amount of $4,415.48 and imposing a doomsday on timely monthly mortgage payments from April 2017 through September 2017. The Mortgage Creditor filed an Affidavit of Default on May 15, 2017 and the Court entered an Order granting the Mortgage Creditor's Motion for Relief from the Stay on May 24, 2017. About a month later, the Debtor's case was dismissed on the Chapter 13 Trustee's Affidavit of Default because she failed to make plan payments. The Debtor did

3

not oppose the Affidavit of Default.  The Debtor's case lasted approximately 8 months from petition filing to dismissal.

<u>Case #2</u>:  The Mortgage Creditor filed a Motion for Relief from Stay on April 4, 2018.  On May 16, 2018, the Court entered an Order authorizing the Mortgage Creditor to file a supplemental claim for the post-petition arrearages in the amount of $4,799.05 and imposing a doomsday on timely monthly mortgage payments from June 2018 through November 2018.  About a month later, the Debtor's case was dismissed on the Chapter 13 Trustee's Affidavit of Default due to the Debtor's failure to make plan payments.  The Debtor did not oppose the Affidavit of Default.  The Debtor's case lasted approximately 9 months from petition filing to dismissal.

<u>Case #3</u>:  The Mortgage Creditor filed a Motion for Relief from Stay on February 5, 2019.  On March 13, 2019, the Court entered an Order authorizing the Mortgage Creditor to file a supplemental claim for the post-petition arrearages in the amount of $5,172.48 and imposing a doomsday on timely monthly mortgage payments from March 2019 through August 2019.  About two months later, the Debtor's case was dismissed on the Chapter 13 Trustee's Motion to Dismiss for failure to comply with the Court's order resolving the Trustee's objection to confirmation.  The Debtor did not oppose the Motion to Dismiss.  The Debtor's case lasted approximately 7 months from petition filing to dismissal.

The impact on the Mortgage Creditor of each of the Debtor's bankruptcy filings has been tremendous.  In Case #1, the Mortgage Creditor filed a proof of claim that showed an amount due of $112,365.02 with a pre-petition arrearage of $34,066.48.  In Case #2, the Mortgage Creditor filed a proof of claim, showing that the amount due had grown to $120,867.04 with a pre-petition arrearage of $42,623.79.  By the time the Mortgage Creditor filed its proof of claim in Case #3, the amount due on the loan had grown to $135,565.45, with a pre-petition arrearage of $61,869.59.  When questioned at the evidentiary hearing as to when she had made the last payment on her mortgage, the Debtor responded, "four or five years ago."

In each of her cases, the Debtor files for bankruptcy, obtains the protection of the automatic stay, fails to pay her post-petition mortgage payments to her mortgage creditor, resulting in substantial supplemental claims being filed by that mortgage creditor on three separate occasions for $4,415.48, $4,799.05, and $5,172.48, and then has her case dismissed shortly thereafter due to a failure to make plan payments or to otherwise comply with her obligations in the Chapter 13 case.  Because her cases are each dismissed within one to two months of the Orders granting the supplemental claims and the Debtor has not succeeded in obtaining confirmation of a Chapter 13 plan, no money is paid to her mortgage creditor on its supplemental claims.  The cycle then starts all over again with a newly scheduled sheriff's sale and a new bankruptcy filing.  The amounts due and owing to the Mortgage Creditor have increased from $112,365.02 in 2016 to $120,867.04 in 2017 to $135,565.45 in 2018.  The pre-petition arrearages due and owing to the Mortgage Creditor have increased from $34,066.48 in 2016 to $42,623.79 in 2017 to $61,869.59 in 2018.  The Mortgage Creditor has not filed a proof of claim in the current case, but one can only expect the arrearages to be substantially higher because the Debtor has not paid on her mortgage loan in "four to five years."  The Debtor's

4

treatment of the Mortgage Creditor in her bankruptcies, the dismissal of each of her bankruptcy cases shortly after the entry of orders on the Mortgage Creditor's motions for relief from stay, the increasing amounts due and owing to the Mortgage Creditor, and the Debtor's admission that she had not paid her mortgage creditor in "four to five years" counsels against a finding that the Debtor has commenced this case in good faith. It does not seem that the Debtor is really trying to pay her mortgage creditor "to the reasonable limit of her ability," but is instead "trying to thwart them." *See Schaitz*, 913 F.2d at 453.

The Debtor spent most of her time at the evidentiary hearing attempting to rebut the presumption that her case was not filed in good faith by focusing on the fact that she has rectified the issues that caused her most recent bankruptcy case to be dismissed. Her 2018 case was dismissed because of the Debtor's failure to comply with the Court's order resolving the Chapter 13 Trustee's objection to confirmation which required the Debtor to:

(i) provide copies of the required tax returns in compliance with LR 1007.2;

(ii) have the claim filed by IRS amended to show that the Debtor filed all tax returns required by 11 U.S.C. § 1325(a)(9), or file an objection to said claim;

(iii) have the claim filed by Wisconsin Department of Revenue amended to show that the Debtor filed all tax returns required by 11 U.S.C. § 1325(a)(9), or file an objection to said claim;

(iv) file an affidavit to support the contribution income disclosed on Schedule I; and

(v) file a motion to participate in the Court's Mortgage Modification Mediation program on or before April 5, 2019.

The Debtor testified during the evidentiary hearing that she has now filed her tax returns. The Debtor also testified that she has now filed an affidavit from her daughter to support her daughter's $400.00 contribution toward household expenses. In reviewing the totality of the circumstances, none of this is sufficient to overcome the lack of good faith outlined above.

The Debtor further testified that she intended to file a motion to participate in the Court's Mortgage Modification Mediation program (the "MMM program") shortly. However, the plans proposed in all three of the Debtor's previous cases also called for participation in the MMM program, and the Debtor has a history of being unable to gather the documents necessary to participate in the program. Although the Court set a deadline for the Debtor to file a motion to participate in the MMM program in the 2016 case, no motion was ever filed. In her 2017 case, the Debtor and the Mortgage Creditor agreed to participate in the MMM program; however, the Mortgage Creditor eventually withdrew from the MMM program because the Debtor failed to provide the documents required by the MMM order. In her 2018 case, the Debtor and the Trustee agreed on a deadline for the Debtor to file a motion to participate in the MMM program,

5

and the Debtor's failure to file the MMM motion by that deadline was one of the reasons the case was dismissed.

This case appears to be no different. As of the date of the evidentiary hearing, the Debtor had not filed a motion to participate in the MMM program. The Debtor admitted that she was still working to gather the documents necessary to participate in the program. She also stated that she had no homeowner's insurance on her property and that it was her understanding that she would need to obtain homeowner's insurance before she could participate in the MMM program. She further testified that she thought she would need to pay $400 to obtain the homeowner's insurance and an additional $100 per month to maintain it. None of these expenses are accounted for on the Debtor's Schedule J that she submitted as part of her bankruptcy filing. The Debtor testified that she planned to use the contribution from her daughter to make the $400 payment, leaving open the question of how she intended to make her monthly plan payment to the Trustee. The Debtor has not overcome the presumption of lack of good faith by clear and convincing evidence with a stated intent to file a MMM motion, but an admitted failure as of the time of the evidentiary hearing to gather the documents necessary to file such a motion.

Additionally, the Debtor has not proven by clear and convincing evidence that there has been a substantial change in her financial position. As reported on her Schedule I, her income has only increased slightly from her 2016 case to her current case. Her expenses on her Schedule J have remained relatively constant throughout each of her four bankruptcy filings. Her monthly net income also has not changed dramatically. She could not make her $74.00 monthly plan payment in her 2016 case, so her case was dismissed for failure to make plan payments. She could not make her $130.00 monthly plan payment in her 2017 case, so that case was also dismissed for failure to make plan payments. The Debtor was under a doomsday to make her $90.12 plan payment in the 2018 case when her case was dismissed for failing to provide the Trustee with certain documents – a dismissal that the Debtor did not oppose. In an attempt to prove a change of circumstances, the Debtor testified that she recently received a raise in the gross amount of an extra $200 per month and that her daughter will be contributing $400 per month toward household expenses which will enable her to pay her $62.13 monthly plan payment.

However, the Debtor also testified during the evidentiary hearing that she has not made her mortgage payment in "four to five years." Her Schedule J in each of her four cases reports that she is budgeting for a monthly mortgage payment of anywhere between $747.80 and $897.00. If she has not been making this mortgage payment for the last "four to five years" as stated during her testimony at the evidentiary hearing, then one would naturally think that she would have an extra $747.80 to $897.00 to contribute toward her plan payment. And yet, her 2016 case was dismissed because she could not afford her $74.00 plan payment and her 2017 case was dismissed because she could not afford her $130.00 plan payment. The Debtor was having an equally difficult time making her $90.12 monthly plan payment in her 2018 case, as evidenced by the Trustee's motion to dismiss the case based on her failure to make plan payments, even though her testimony indicates that she was not paying her mortgage at that time either. The Court is not persuaded that there has been a substantial change in the Debtor's financial position such that she can make her post-petition monthly mortgage payment and her monthly plan payment.

6

For the reasons outlined above, and based upon the Debtor's testimony, arguments and statements of counsel, and all the files, records, and proceedings herein, the Court finds that the Debtor has not met her burden of proving by clear and convincing evidence that this bankruptcy case has been filed in good faith. Accordingly, the Debtor's Motion to Continue the Automatic Stay pursuant to 11 U.S.C. § 362(c)(3)(B) is denied.

Dated: October 3, 2019

*Katherine M. Perhach*
Katherine Maloney Perhach
United States Bankruptcy Judge